Our first case of the morning is Whitcomb v. Meng Horng for the appellant, Mr. Unrath, for the athlete, Mr. Ginsky. You may proceed. Thank you, Your Honor. My name is Craig Unrath and I represent Dr. Meng Horng. This is a very close case. This case is hanging by a thread. The very first trial resulted in a mistrial due to a hung jury. The second trial, the jury reported that they were deadlocked. It was only after releasing the jury for the weekend that they came back and issued a ruling on this. We submit that there are two very serious issues that arose in this ruling. The first is that the trial court erred in directing a verdict, refusing to direct a verdict as to all allegations involving post-operative care. And furthermore, and this I think is the most serious, failed to err in instructing the jury on these issues when there was absolutely no evidence to support them. Our second issue is that the trial court erred in allowing Dr. Peterson to testify as to causation, despite the fact that he was admittedly incompetent to testify to the standard of care. Now as to the first issue, we have four different allegations of post-operative care. We had a failure to exclude urinal injury when there was flank pain. I find no support in the evidence for that at all. Dr. Horng took account of the flank pain and immediately ordered a sonogram. The second one is that he failed to order an IVP test despite an abnormal ultrasound. Well, we had numerous testimony from witnesses that said that there was nothing abnormal about that test. There's another allegation that he assumed that there was no urinal injury, and that's not true. He took into account her flank pain, performed a knock injury, performed a sonogram. He was concerned about this. This is a known risk of a total hysterectomy. And finally, we have the allegation that he failed to order an IVP when she exhibited signs of urinal injury. And again, there were no signs of urinal injury while she was in the hospital post-operatively. But the most critical element in this case is that there was a complete failure of proof that these alleged failures to order these tests post-operatively somehow caused her injury. We did not have any witness say that the delay in performing these tests caused her any harm. There is no causation testimony linking the delay in performing these tests with the ultimate injury in this case. And I think it's important to identify that ultimate injury. The ultimate injury here is that she was forced to go back for a second surgery to resect the ureter to her bladder. And the primary issue in this case is that that resection resulted in what they know is called a refluxing ureter. So that in certain cases, urine can re-enter the ureter and travel up. Now, there are two witnesses that testified as to this. We have the plaintiff's retained expert, Dr. Davis. And he was asked to comment on causation. And he said, well, if they performed a sonogram post-operatively, and if that sonogram had – or an IVP, I'm sorry. Well, then I would have deferred to a urologist to determine what to do next. And he might have gone in and said, let's return her to surgery and let's see if we can clear that. But when asked if he had any specific knowledge of this, he said, well, I'm a little bit out of my league here. He said, I'm not a urologist. So his causation testimony is completely insufficient. The only other testimony we have is from the uncontrolled expert, Dr. Burley. He actually performed the resection. And he said, in a general sense, yeah, fixing an occlusion to a ureter is – it's better to do it sooner than later. Now, was he talking about this patient or in general? He had no opinion at all on causation. He said that the occlusion was in a way associated with the hysterectomy. But at no time did he say that it was caused by it. And he could never identify the mechanism. Now, a directed verdict is appropriate where the causal connection between treatment or the delay in treatment and the claimed injury is speculative. And that's precisely what we have here. The trial court took this a step further and refused to remove these allegations of post-operative negligence from the jury instructions. Now, in a close case like this, this is telegraphing to the jury that there really is some evidence out there when there was not. Opposing counsel points out that our trial attorney did not mention the word – use the word direct – or phrase directed verdict. And he's absolutely correct. What he did say was there was a complete failure of proof on the issue of post-operative care. Therefore, this should not go to the jury. And I submit that there is absolutely no distinction between what he said and asking for a directed verdict. Well, counsel, I wonder about that. Because I guess you say that your counsel didn't utter the words directed verdict. And you concede that's true. But doesn't a trial court act on a request? And so how was the trial court to grant a directed verdict if no one asked for a directed verdict? Well, and that's why I structured my argument as I did. I could have separated this and said the court erred in failing to direct a verdict, and the court erred in instructing the jury on elements of a case for which there was no supporting evidence. I combined the two. Now, this is not some attempt to mislead the court. What I'm saying here is that they really are the same thing. When he said, ask the court, remove these allegations from the jury instruction, what he's saying is I want you to take this issue away from the jury. To my mind, that's a directed verdict. And so if that request had been granted, there would be no need to ask for a directed verdict because that issue would not be going before the jury. And that's all he wanted was that the jury not be instructed as to these issues because it suggests to the jury that there really is some evidence supporting those allegations. I cited in my brief a statement from the Supreme Court, I believe it was in the Leonardi case, that laypersons are not trained to separate issues and disregard irrelevant matter. That's why they rely on these jury instructions. And in a close case like this, that was essential. Now, another argument that counsel raised, and quite frankly, I was very concerned about this, was the separate verdict issue. We don't know what bases the jury ruled on. Perhaps the jury ruled in plaintiff's favor solely on the operative care. However, when you look at the Code of Civil Procedure, that's section 2-1201D, it says that we do not need a special interrogatory where there's been a motion made to remove those issues from the jury due to insufficient evidence. In the end, instructing the jury that's... based upon the court's ruling? No, I'm saying that we were not required to ask for one. Because you made the motion as to those issues that you're wanting us to basically consider a motion for directed verdict. That's correct, Your Honor. Moving on to the second issue, and this is... Well, once you lose that... Pardon me? You lose the issue. I mean, you lose the motion before the trial court. Right? The motion to... Remove that issue. Right. Well, then what should counsel have done? What should he have done? Just hope that that takes care of it on appeal, or should the jury be properly instructed? Probably instructed from the defendant's perspective. We're back to special interrogatory. Right. Why should we have to deal with an issue on appeal when defense counsel had the opportunity to say, well, Judge, you sent that to them. I understand you think that's the proper instruction, but we're proposing these special interrogatories, which will make it clear when the jury reaches a verdict, whether it's general negligence or they relied upon this stuff that we don't think they should have heard about. Things they should not consider. And my response to that is that I have to question whether we are required to take that step. And ask whether you're required. Yeah. I'm talking about best practices. Best practice would be to convince the court that there has been no evidence on this issue. I cannot say that issuing a special interrogatory would have been best practice because it would serve to refocus the jury's attention on postoperative care. And again, that was wholly unwarranted. There are many times where due to contractual issues or insurance underlying, perhaps excess insurers, where a special interrogatory is essential to aid the party who submits it. In this case, it's not so much aiding us as it's an attempt to correct an error by the trial court. And that's where I... I always thought that was a good thing to do. But the failure to ask for the special interrogatory, does that impact your ability to demonstrate that you were prejudiced by this? I mean, how do we know? I think the prejudice is apparent on its face. The fact that the jury was instructed on issues that have no evidence supporting it, and we've cited Supreme Court precedent to that effect, is that a jury has a right to be instructed as to all issues that are supported by the evidence. And that's not only in Supreme Court precedent, but it's actually in the IPI instructions themselves. I believe that's IPI number 20. But I don't understand how that goes to you proving that you were prejudiced. I think that in a close case like this to... Why is it a close case? I think it's a close case because had... Quite frankly, in most cases like this, I would have included a manifest weight argument because the evidence was so clearly, to my mind, heavily favoring the defendant, Dr. Horne. The only reason I did not is that the standard is so high. We have an expert, retained expert for the plaintiff, who said in no uncertain terms that there was negligence here. And I don't know that I can overcome that with a manifest weight argument before this court. That's the only reason I can sort of raise it. Which seems to be exactly the reason that you need the special interrogatory. Because you have to... One would argue you have to show prejudice because it's clear that there is an expert and there is testimony to satisfy a general verdict. And you already know that, or counsel is assumed to know that and doesn't argue the manifest weight or doesn't anticipate that coming up on appeal. So why not do the special interrogatory? I think the reason is, as I mentioned before, is it refocuses the jury's attention on this evidence of post-operative care that didn't exist. It's also... Yeah, but this isn't a post-conviction petition in a criminal case. What are you talking about? Well, the lawyer did what he did because that was trial strategy. So that's an even tougher hurdle to overcome on the criminal side. This is where, hey, I got this issue. The judge ruled against me. What can I do to repair that? But I understand your point about that refocuses on what you don't want the jury to hear anyway. And I think it's also because the nature of the special interrogatory is going to be so neutral that it would not serve our interests. The special interrogatory I would like to have submitted is, did Dr. Davis satisfy the element of proximate causation? And chances are that's not going to be allowed. We can't use that special interrogatory to focus the jury's attention on the failure of evidence. What we have to do is put this up as a neutral question. Is it permissible to comment on special interrogatories during a closing argument? The closing arguments were made. No, I mean the special interrogatory. His Honor will instruct you, and you will be answering a very specific question. And if your answer to that question is such and such... And I see that this serves only the interests of the plaintiff, in that the form of the special interrogatory that would likely be approved would not be one that attacks plaintiff's expert witness. More than likely it would be, do you find anything, any evidence supporting the postoperative care? And here we get back again to the Illinois Supreme Court's holding, is that laymen are not trained to separate irrelevant evidence. Again, I think that it only favors the plaintiff to offer a special interrogatory under these circumstances. The best result is for the court to rule properly in the first place and not put these issues before the jury at all. And I don't even know if a special interrogatory would cure that. I think that the suggestion there is made, that there's some evidence out there. And I think that it, in a sense, prejudices us almost as much by issuing a special interrogatory as it does to not do so. In either event, under the Code of Civil Procedure we're not required to. We can't, we submit that there can be no error assigned to us for a failure to request a special interrogatory. If the court has no further questions on that particular issue, I'd like to move on to the expert testimony of Dr. Peterson. I find this issue highly disturbing, that a witness was allowed to testify that he had no opinion whatsoever as to whether my client provided good care to his patient. He had no opinion as to whether he injured the plaintiff. And yet, he was allowed to testify that to a reasonable degree of medical certainty, he ran a suture through this patient's ureter, which caused all sorts of injuries here. I don't see how we can allow experts to talk out of both sides of their mouth like this. If you are incompetent to testify as to the standard of care, then you have no business getting up there and talking about causation. Now the reason for that is that medical malpractice litigation suits are not resolved by determining whether mistakes were made. They're resolved only on the basis of whether there was a breach of the standard of care. If somebody's going to talk about causation, you made a mistake, you ran a suture through that ureter and that's what caused all of her problems, but are incompetent, admittedly incompetent, to link that with the standard of care, I submit that that serves only to confuse the jury. That's all I have for you this morning. If there are no further questions, we ask that you reverse. Thank you. We'll hear from you on rebuttal. Mr. Gansky. Please, the court and counsel, with respect to this issue of directed verdict, I think you are obligated as defense counsel to specify what you're asking for. The only mention with the phrase directed verdict at the time of the trial was in connection with one subparagraph of plaintiff's issues instruction, subparagraph E. There was no request that the rest of those allegations be thrown out with respect to postoperative care. Counsel argues that with respect to the issue of postoperative care, there was a complete lack of testimony concerning that issue. I beg to differ. There were three different witnesses who testified to that. And notes here. One of which was Dr. Miller, old German pronunciation, Dr. Davis, the retained expert for the plaintiff, and then Dr. Burrill. Every one of those witnesses testified that times of the essence with respect to removing the suture. That was clearly before the jury. There was evidence supporting those allegations, and it would have been error to take those allegations away from the jury. What was the evidence that the suture was improperly even put in place? Doctors Peterson and Challion, the treating physicians, testified to that. They testified that based upon their treatment of this patient postoperatively, that it was their opinion, because this is what they do for them, that the suture was placed during the surgery. So, two non-retained experts, two 213F2 experts, who aren't within the control of the plaintiff, both testified that it was the suture that caused this change. And frankly, we'd be here anyway. I mean, even assume that there was a proper motion for direct verdict with respect to the allegations concerning postoperative care. The fact of the matter is that the suture was placed at the time of the operation, and it wasn't repaired in a timely fashion, and she had to go through re-implantation anyway. I guess my point would be this. If plaintiff had confined her allegations just to the two allegations concerning intraoperative care, we'd still be here, because she still would have had to go through that re-implantation at a later point in time. So I think a lot of this is irrelevant. With respect to Dr. Peterson, I would indicate that in Illinois, whether a witness qualifies as an expert is left to the sound discretion of the trial court, and reviewing courts will not interfere with the determination of the trial judge unless there has been a clear abuse of discretion. This court follows that specific statement of law as set forth in this court's 1993 opinion of Moss, MOSS v. Miller, 254 Illinois Code 3rd 174, as does the Illinois Supreme Court in the 2003 decision of Snelson v. Kamm, 204 Illinois 2nd, page 1. There is an older case from the Illinois Supreme Court, so it's probably just persuasive authority because it goes back to 1949, and was not cited in the plaintiff's brief, but the citation is Finn, F-I-N-N, v. Kamm, 403 Illinois 167. And in that case, the Illinois Supreme Court said, of the opinions of two physicians, that will prevail, which is the opinion of the physician who has attended the person in question, rather than the opinion of a medical expert based only on a hypothetical statement of facts. Counsel, let's go back to something you said at the very beginning. I want to make sure I heard you correctly. Are you saying that counsel for the defendant did not seek to remove all issues of post-operative care from the jury? His argument was focused on that element B at the time of the jury instruction conference. And so your answer to my question is, yes, that is what you're saying then? Correct. Okay. Counsel argues that this was a close decision. I don't think it was, because it has to be an anonymous jury. It was a jury of 12, so it was a 12-0 decision. I don't think 12-0 was close. With respect to the lack of a special interrogatory, I think that's fatal to the appeal. The codification of this two-issue rule by the statute doesn't dispense with the necessity for a special interrogatory. And I think that two different Illinois Supreme Court cases so hold. In 1987, the Illinois Supreme Court decided the case of Witherall v. Weimer, 118 and Illinois 2nd, 321. It reaffirmed that decision in Dillon v. Edison Hospital in 2002 at 199 and Illinois 2nd, 483. You can't sit here at this juncture and speculate as to what the jury did when there wasn't a special interrogatory directed at the argument that counsel is making. The codification of that two-issue rule doesn't dispense with the need for a special interrogatory. I have no other points to make unless there are specific questions by the court. Counsel, I have just one question. Towards the end of the reply brief, in fact it's the very last sentence of the reply brief, the opposing counsel says that it's incumbent upon this court to rectify a problem that threatens to eviscerate Section 5-8-2501 of the Code of Civil Procedure, which is the section regarding expert witnesses. What's your response to that? I'm not sure that I understand the question, Your Honor. But if it's directed to Dr. Peterson and whether he's qualified? Yes, correct. That's what it pertains to. Dr. Peterson did the only thing that he's capable of doing because by our rules, case laws as developed in this state, a primary care physician who does not perform hysterectomies is not going to be allowed to testify as to standard of care against a gynecologist, obstetrician-gynecologist. That's not going to be allowed. But those are two separate and very distinct issues. Deviation from standard of care is one issue. Causation is another. But there's nobody in a better position to testify as to the cause of an injury or a condition than the primary care physician who had been caring for this particular patient for 18 years at the time that this event happened and directed her care with respect to the anterograde stenting that was tried, the retrograde stenting that was tried, the insertion of the nephrostomy tubes. That was all directed by Drs. Peterson and Chalyan. And they've been down this road before. Dr. Chalyan, frankly, is the urologist trained by Dr. Furl over in Indianapolis. But those two are more qualified to testify on the issue of causation than anybody else that was presented in the case. Thank you. No other questions. Thank you. Bill? Well, when Dr. Peterson did not proffer testimony about, well, he left a sponge on the table or he didn't follow certain hospital procedures, he gave an opinion as to the central issue in the case, which is, what happened here? How did this injury occur? And he gave causation evidence stating that he's convinced that a suture was placed through the ureter, either through or around, and that's what caused this whole problem here. Now, counsel also mentioned that this is the admission of expert testimonies within the discretion of the court. I agree with that entirely. I also agree that it's a very high standard to meet. But in this case, I think that the court clearly abused its discretion. If the expert is incompetent to testify as to how his opinions relate to the standard of care, then I don't see how it's relevant here. And to say that you can tell a jury, well, I have no opinion as to whether or not good care was given to this patient. However, they clearly made a huge mistake here and ran a suture by mistake through the ureter, causing the ultimate injury in this case. I don't see how you can harmonize that. And I'm afraid that if this is followed in future cases, that we would have a significant problem on our hands. And this led to my conclusion in the reply brief, my argument, that this would completely eviscerate all standards of care for expert testimony in medical malpractice cases. We cannot allow a witness to criticize the actual conduct of medical treatment and yet hide behind the disclaimer that, but I'm not going to say that it was wrong. I'm just going to say that they made a mistake. I'm going to let you decide whether that injury caused the plaintiff to pain and suffering and disability. That's all the remarks I have. If there are no further questions. Thank you. We'll take the matter under advisement. We are ready to see the next case. Thank you.